**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GRACE JONAS, JOSEPH MEYER, JAKE
PAVLOW, AND ERIK SCHALK, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

        v.

CENTER STAGE COMEDY L.P.,
        Defendant.

:
:
:
:
:
:
:
:
:
:
:

CIVIL NO. 2:25-CV-02698

<u>**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**</u>

## TABLE OF CONTENTS

I.     Introduction ........................................................................................................... 1

II.    Factual and Procedural Background ...................................................................... 4

    A.    Center Stage's Ticket Purchase Process .................................................... 4

    B.    Plaintiffs' Purchases.................................................................................... 5

    C.    The Litigation............................................................................................... 5

III.   Legal Standard ...................................................................................................... 6

IV.    Argument ............................................................................................................... 8

    A.    Plaintiffs Lack Article III and Statutory Standing Because They Have Not
          Suffered an Injury-in-Fact (Counts I–IV) .................................................. 8

          1.    Plaintiffs Do Not Allege Cognizable Economic Injury Because
                They Received What They Paid For ............................................... 9

          2.    Plaintiffs Cannot Establish Economic Injury Based on the Timing
                of Price Disclosures Made Prior to their Purchase ................................... 10

          3.    Plaintiffs Suffered No Economic Injury by Agreeing to Pay a Fee
                Center Stage was Legally Entitled to Charge ........................................... 11

    B.    Plaintiffs' Statutory Claims Fail For Multiple Additional Reasons...................... 12

          1.    Center Stage's Disclosure of The Service Fee Precludes Any
                Showing of a Deceptive Act (Counts I–III)............................................. 12

          2.    Center Stage's Inclusion of a Service Charge Would Not Mislead a
                Reasonable Consumer (Counts I and II)................................................... 14

           3.    Plaintiffs Cannot Show Justifiable Reliance (Counts I and III)................ 17

          4.    Plaintiffs Do Not Allege an Incurable or Uncured Deceptive Act as
                Required by the Indiana DCSA (Count III)............................................. 20

    C.    Plaintiffs' Unjust Enrichment Claims Fail (Count IV) ......................................... 21

          1.    Defendants' Retention of the Service Charge is Not Inequitable or
                Unjust................................................................................................... 21

2.      The Parties' Relationship is Governed by an Express Contract ............... 22

D.      The Court Should Ignore References to the FTC Rule and the FTC Act ............. 23

V.      Conclusion ................................................................................................................ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Huntington Valley Surgery Ctr.*,
No. 2:13-CV-3101-WY, 2014 WL 4116963 (E.D. Pa. Aug. 20, 2014) ...............................9, 22

*Am. Standard Ins. Co. of Wisconsin v. Bracht*,
103 S.W.3d 281 (Mo. Ct. App. 2003).................................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................6, 7

*Bayh v. Sonnenburg*,
573 N.E.2d 398 (Ind. 1991) ................................................................................................21

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................................6, 7

*Bell v. Annie's, Inc.*,
673 F. Supp. 3d 993 (E.D. Mo. 2023)....................................................................................14

*Bimbo Bakeries USA, Inc. v. Rubio*,
771 F. Supp. 3d 584 (E.D. Pa. 2025) ......................................................................................8

*Bounts Techs. Ltd. v. Connectify, Inc.*,
No. 2:23-CV-890-MRP, 2025 WL 417339 (E.D. Pa. Feb. 6, 2025) ........................................7

*Carr v. Travelers Home & Marine Ins. Co.*,
700 F. Supp. 3d 288 (E.D. Pa. 2023) ......................................................................................6

*Charbonnet v. Omni Hotels & Resorts*,
2020 WL 7385828 (S.D. Cal. Dec. 16, 2020)..................................................................13, 15

*Cherry v. Chicago & A.R. Co.*,
90 S.W. 381 (Mo. 1905) ......................................................................................................18

*City of Philadelphia v. Lead Indus. Ass'n*,
No. 90-7064, 1992 WL 98482 (E.D. Pa. Apr. 23, 1992).........................................................18

*CoMentis, Inc. v. Purdue Rsch. Found.*,
765 F. Supp. 2d 1092 (N.D. Ind. 2011) ...............................................................................22

*Crum v. SN Servicing Corp.*,
No. 1:19-CV-02045-JRS-TAB, 2021 WL 3514153 (S.D. Ind. Aug. 10, 2021) .......................12

*Danvers Motor Co. v. Ford Motor Co.*,
    432 F.3d 286 (3d Cir. 2005)................................................................................9

*Dean Mach. Co. v. Union Bank*,
    106 S.W.3d 510 (Mo. App. 2003) ......................................................................22

*Doe v. Butler Univ.*,
    696 F. Supp. 3d 520 (S.D. Ind. 2023) ................................................................22

*Ellison-Robbins v. Bimbo Bakeries USA, Inc.*,
    751 F. Supp. 3d 948 (E.D. Mo. 2024)........................................................14, 15, 16

*Fakhreddine v. Univ. of Pennsylvania*,
    No. 24-CV-1034, 2024 WL 3106186 (E.D. Pa. June 24, 2024), *appeal
    dismissed*, No. 24-2240, 2024 WL 5316377 (3d Cir. Jul. 26, 2024) ........................8

*Gatling v. Newell*,
    9 Ind. 572 (1857)............................................................................................18

*Goldsmith v. Lee Enters. Inc.*,
    57 F.4th 608 (8th Cir. 2023) ..............................................................................8

*Hall v. Equifax Info. Servs. LLC*,
    204 F. Supp. 3d 807 (E.D. Pa. 2016) ................................................................14

*Harris v. Las Vegas Sands L.L.C.*,
    2013 WL 5291142 (C.D. Cal. Aug. 16, 2013).....................................................10

*Harris v. LAZ Parking Ltd., LLC*,
    No. 3:24-CV-889 (SVN), 2025 WL 473654 (D. Conn. Feb. 12, 2025) ...............16, 17

*Hendrick v. Aramark Corp.,* 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) ........................6

*Hennessey v. Gap, Inc.*,
    86 F.4th 823 (E.D. Mo. 2022)....................................................................9, 10, 21, 22

*Hernandez v. Ill. Inst. of Tech.*,
    63 F.4th 661 (7th Cir. 2023) .............................................................................22

*Hoosier Contractors, LLC v. Gardner*,
    212 N.E.3d 1234 (Ind. 2023), *reh'g denied* (Sep. 25, 2023) ...............................8, 17

*Horney v. Nixon*,
    61 A. 1088 (Pa. 1905)......................................................................................18

*Howard v. Turnbull*,
    316 S.W.3d 431 (Mo. Ct. App. 2010)................................................................21

*Hughes v. Chattem, Inc.*,
    818 F. Supp. 2d 1112 (S.D. Ind. 2011) .................................................................9, 10, 21, 22

*Hunt v. U.S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) ........................................17

*Indianapolis St. R. Co. v. Wilson*,
    66 N.E. 950 (Ind. 1903) ...............................................................................................18

*In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab.*
    *Litig.*,
    903 F.3d 278 (3d Cir. 2018)...........................................................................................9

*Kelly v. Levandoski*,
    825 N.E.2d 850 (Ind. Ct. App. 2005)..........................................................................21

*Kornea v. J.S.D Mgt., Inc.*, 366 F. Supp. 3d 660 (E.D. Pa. 2019) ..................................23

*Lehman v. Shroyer*,
    721 N.E.2d 365 (Ind. Ct. App. 1999)..........................................................................21

*Long v. Valley Forge Mil. Acad. Found.*, No. CIV.A. 05-4454, 2008 WL
    5157508, (E.D. Pa. Dec. 8, 2008) ..................................................................................6

*Lisowski v. Henry Thayer Co., Inc.*,
    501 F. Supp. 3d 316, 334 (W.D. Pa. 2020), *on reconsideration in part*, No.
    CV 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021) ......................................14

*Lizama v. H&M Hennes & Mauritz LP*,
    No. 4:22 CV 1170 RWS, 2023 WL 3433957 (E.D. Mo. May 12, 2023) ...................14

*Mator v. Wesco Distrib., Inc.*,
    102 F.4th 172 (3d Cir. 2024) ..........................................................................................7

*McLean v. Big Lots Inc.*,
    542 F. Supp. 3d 343 (W.D. Pa. 2021)...........................................................12, 13, 19, 20

*Morse v. Lower Merion Sch. Dist.*,
    132 F.3d 902 (3d Cir. 1997)............................................................................................7

*MRO Corp. v. Humana Inc.*,
    383 F. Supp. 3d 417 (E.D. Pa. 2019) ..........................................................................21

*Murphy v. Stonewall Kitchen, LLC*,
    503 S.W.3d 308 (Mo. Ct. App. 2016)..........................................................................14

*Nicolaides v. Bank of Am. Corp.*,
    No. 10-1762, 2012 U.S. Dist. LEXIS 96576 (E.D. Pa. Jul. 11, 2012)......................19

*O'Shaughnessy v. Cypress Media, LLC*,
   208 F. Supp. 3d 1064 (W.D. Mo. 2016) ........................................................................11

*Palmer v. Ameribanq Mortg. Grp., LLC*,
   No. 05-2023, 2010 U.S. Dist. LEXIS 107340 (E.D. Pa. Oct. 6, 2010) ...................................17

*Pennsylvania Co. v. Bray*,
   25 N.E. 439 (Ind. 1890) ........................................................................18

*Pension Benefit Guaranty Corporation v. White Consolidated Industries*,
   998 F.2d 1192 (3d Cir. 1993)........................................................................7

*Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*,
   No. CV 16-665, 2017 WL 4235773 (E.D. Pa. Sep. 25, 2017)........................................18

*PJSC Credit-Moscow Bank v. Khairoulline*, No. CV 15-6604, 2016 WL 4454208,
   (E.D. Pa. Aug. 24, 2016)........................................................................6

*Plymale v. Upright*,
   419 N.E.2d 756 (Ind. Ct. App. 1981)........................................................18, 19

*Reger v. Arizona RV Centers*,
   LLC, 515 F. Supp. 3d 915 (N.D. Ind. 2021), *dismissed*, No. 22-3169, 2023
   WL 3750399 (7th Cir. Mar. 2, 2023)........................................................17, 19, 20, 21

*Ruggiero v. Nocenti*,
   No. CV 18-3047, 2020 WL 7133767 (E.D. Pa. June 30, 2020) ...................................21

*In re Rutter's Inc. Data Sec. Breach Litig.*,
   511 F. Supp. 3d 514 (M.D. Pa. 2021) ........................................................8, 9

*Scaife Co. v. Rockwell-Standard Corp.*,
   285 A.2d 451 (Pa. 1971)........................................................................18

*Schulte v. Conopco, Inc*,
   No. 4:19 CV 2546 RWS, 2020 WL 4039221 (E.D. Mo. Jul. 17, 2020), *aff'd*,
   No. 20-2696, 2021 WL 1971957 (8th Cir. May 18, 2021)........................................12

*Seidl v. Artsana USA, Inc.*,
   643 F. Supp. 3d 521 (E.D. Pa. 2022) ........................................................9

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)........................................................................8

*Topchian v. JPMorgan Chase Bank, N.A.*,
   760 F.3d 843 (8th Cir. 2014) ........................................................21

*Toy v. Metro. Life Ins. Co.*,
   863 A.2d 1 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007)...............................................19

*Toy v. Metro. Life Ins. Co.*,
   928 A.2d 186 (Pa. 2007) .........................................................................................................18

*Vitello v. Natrol*,
   LLC, 50 F.4th 689 (8th Cir. 2022)..........................................................................................9

*Vorchheimer v. Philadelphian Owners Ass'n*,
   903 F.3d 100 (3d Cir. 2018).....................................................................................................7

*Washington v. Hyatt Hotels Corp.*,
   No. 1:19-CV-04724, 2020 WL 3058118 (N.D. Ill. June 9, 2020)....................................10, 13

*Webb v. Dr. Pepper Snapple Grp., Inc.*,
   No. 4:17-00624-CV-RK, 2018 WL 1955422 (W.D. Mo. Apr. 25, 2018) ...............................14

*Weinberg v. Sun Co.*,
   777 A.2d 442 (Pa. 2001) .........................................................................................................17

*Wiener v. Banner Life Ins. Co.*,
   2003 U.S. Dist. LEXIS 4957, No. 02-1351 (E.D. Pa. Feb. 28, 2003) .......................................7

*Williams v. Enter. Holdings, Inc.*,
   No. CIV.A. 12-05531, 2013 WL 1158508 (E.D. Pa. Mar. 20, 2013)......................................22

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
   854 A.2d 425 (Pa. 2004) .........................................................................................................19

*Zucker v. Pennsylvania Pub. Util. Comm'n*,
   401 A.2d 1377 (Pa. Commw. Ct. 1979) ..................................................................................11

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).......................................................................6

FTC Act, 15 U.S.C. § 45(a) 46-49..............................................................................................23

Ind. Code Ann. § 24-5-0.5-2(a)(7).............................................................................................20

Ind. Code Ann. § 24-5-0.5-4(a) .................................................................................................20

Ind. Code Ann. § 24-5-0.5-5(a) .................................................................................................21

Ind. Code Ann. § 24-5-0.5-5(a)1(2)...........................................................................................20

Ind. Code Ann. § 24-5-0.5-3(a) ......................................................................................... *passim*

Mo. Stat. § 407.020(1) ................................................................................................ *passim*

Pa. Stat. § 201-3(a)..................................................................................................... *passim*

**Other Authorities**

FTC Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2,066
 (Jan. 10, 2025).....................................................................................................22

U.S Const. Art. III...............................................................................................2, 6, 8, 12

Defendant Center Stage Comedy L.P. ("Center Stage") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss the Complaint filed by Plaintiffs Grace Jonas, Joseph Meyer, Jake Pavlow, and Erik Schalk (collectively "Plaintiffs") on behalf of themselves and all others similarly situated.

## I.   **INTRODUCTION**

This lawsuit seeks recovery for an alleged deception that never occurred.  Plaintiffs bought tickets online from Center Stage to see comedy shows at Helium Comedy Clubs in Philadelphia, St. Louis, and Indianapolis.  They voluntarily incurred service charges that Center Stage disclosed prior to their purchases, and nonetheless paid for the tickets and attended the shows.  They now seek to represent a class of similarly situated ticket purchasers in Pennsylvania, Missouri, and Indiana, all of whom are essentially asking for a refund plus other damages, in many cases months and sometimes years after they attended comedy shows.

Plaintiffs allege that Center Stage "charged consumers a junk 'service charge' . . . when they purchased tickets from Helium's website."  Compl. ¶ 50.  This charge underpins their unfair and deceptive trade practices and unjust enrichment claims.

Yet Plaintiffs admit the following facts:

- They chose to visit Center Stage's website to purchase tickets to Helium Comedy Club shows.  *Id.* ¶¶ 68, 76, 84, 92.

- Before purchasing their tickets, they saw the full ticket price for the shows they selected.  *Id.* ¶¶ 59, 66.

- The full ticket price included a breakdown of taxes and charges, including the service charge, in large, easy-to-read font.  *Id.* ¶ 66.

- After seeing the full ticket price, Plaintiffs entered their payment information to purchase their tickets.  *Id.* ¶¶ 67, 68, 76, 84, 92.

Notably, the Complaint contains none of the usual hallmarks of a consumer protection claim. It does not allege, for example, that Center Stage provided Plaintiffs an inferior product or a different set of tickets than advertised. Plaintiffs do not claim (i) they did not get to see the show they selected; (ii) the show did not take place at the date, time or location they selected; (iii) they did not get the seat they selected; or (iv) they were dissatisfied with the show. In short, Plaintiffs received exactly what they paid for and therefore suffered no damages as required to recover under any of their claims.

To distract from these fundamental flaws in their case, Plaintiffs devote much of the Complaint to a diatribe against "drip pricing," an academic theory that the cadence of price disclosures affects consumer behavior. *Id.* ¶¶ 1–6, 19–49. They make sweeping allegations that drip pricing taps into "psychological mechanisms" and "behavioral biases" that apparently lull unidentified consumers into purchasing decisions they later regret. *See id.* ¶¶ 23–24. But Plaintiffs base this entire discussion on a recent Federal Trade Commission (FTC) rule that is utterly irrelevant to this lawsuit for multiple reasons: (i) the rule is purely prospective in nature and therefore does not apply to Plaintiffs' purchases at issue here; and (ii) the rule can only be enforced by the FTC, not private plaintiffs; and (iii) Plaintiffs concede Center Stage's current disclosures comply with the rule.

In any case, Plaintiffs' extended discussion of the psychology of consumer behavior cannot erase the simple fact that Plaintiffs purchased their tickets with full knowledge of the total price and each of its components. *See id.* ¶ 67. As a result, Center Stage is entitled to dismissal of this action on multiple independent grounds.

First and most fundamentally, Plaintiffs lack Article III and statutory standing because they received exactly what they paid for: tickets to comedy shows at Helium Comedy Clubs.

2

This threshold defect alone dictates dismissal of their Complaint under Fed. R. Civ. P. 12(b)(1). Second, Plaintiffs fail to allege multiple elements of the various state laws they invoke—the Pennsylvania Unfair Trade Practices and Consumer Protection Law (the "Pennsylvania UTPCPL") the Missouri Merchandising Practices Act (the "Missouri MPA"), and the Indiana Deceptive Consumer Sales Act (the "Indiana DCSA"). Accordingly, dismissal is warranted under Fed. R. Civ. P. 12(b)(6).

By way of example, they cannot recover on their Pennsylvania or Missouri statutory claims because Center Stage's inclusion of the service charge would not mislead a reasonable consumer. In fact, a reasonable consumer would understand that the base price of a ticket does not necessarily reflect all components of the total price, including a service charge covering the seller's costs to facilitate a convenient, online sale. Similarly, because Center Stage disclosed the full ticket price, including the service charge, before Plaintiffs paid for their tickets, they cannot establish justifiable reliance on the pre-service charge price, which mandates dismissal of their Pennsylvania UTPCPL and Indiana DCSA claims. In addition, they have not alleged an "incurable" or "uncured" deceptive act under the Indiana DCSA because they did not provide Center Stage with the required statutory notice and opportunity to "cure." Finally, insofar as they base their claims on a theory of fraud, Plaintiffs fail to allege scienter or damages, as required under each of the three state laws at issue.

Nor can Plaintiffs save this action by invoking the common law of unjust enrichment. Center Stage's retention of a service charge it is legally entitled to collect is neither inequitable nor unjust. Further, when they purchased their tickets, Plaintiffs entered into an express contract with Center Stage that included the service charge, and the existence of this contract precludes Plaintiffs' unjust enrichment claims.

3

In sum, the Complaint seeks a solution to a nonexistent problem. Plaintiffs purchased tickets to comedy shows, attended those shows without incident, and months later seek damages that are not legally cognizable. The Complaint should be dismissed with prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Although the Complaint contains multiple allegations that are either incomplete or simply wrong, for purposes of this motion, the Court must accept the allegations as true. Allegations pertinent to the motion are set forth below.

### A.    Center Stage's Ticket Purchase Process

Center Stage is a limited partnership that operates a website through which individuals can purchase tickets to Helium Comedy Club shows. Compl. ¶ 7. The website lists upcoming shows for each Helium Comedy Club location, with an option to "Buy Tickets" to each. *Id.* ¶¶ 54–55. When a customer clicks on the "Buy Tickets" option, the website displays the base price of the ticket, *i.e.*, the general admission price, with an option to add ticket protection in the event the customer cannot ultimately attend the show. *Id.* ¶ 59. After deciding whether to add ticket protection, the customer is presented with a "Shopping Cart" that again lists the ticket's base price. *Id.* ¶ 62. From the Shopping Cart, the customer can "Proceed to Checkout," where the website displays an "Order Summary" clearly listing each component of the total price in equally large font, including the base price, taxes, and the contested service charge. *Id.* ¶ 66. The customer is under no obligation to complete the purchase and may abandon the transaction after viewing the total price.

As shown in the screenshots reproduced in the Complaint and displayed below, Center Stage disclosed the total price of each ticket including the service charge before accepting payment from customers. *Id.* ¶¶ 66–67. In fact, Plaintiffs admit they knew the total cost of their

4

tickets, including the service charge, before completing their transactions. *Id.* ¶¶ 67, 75, 83, 91, 99.



B.    **Plaintiffs' Purchases**

Between April 11, 2024, and January 11, 2025, Plaintiffs used Center Stage's website to purchase tickets to shows at Helium Comedy Clubs in Philadelphia, Pennsylvania; St. Louis, Missouri; or Indianapolis, Indiana. *Id.* ¶¶ 68, 76, 84, 92. They now claim Center Stage's inclusion of a reasonable service charge in the total ticket price was deceptive. Specifically, they accuse Center Stage of "advertising one up-front price not available to any consumer and charging a different, higher price, which included a hidden mandatory fee." *Id.* ¶¶ 113–14, 119, 127.

C.    **The Litigation**

On May 28, 2025, Plaintiffs filed the Complaint seeking monetary relief under the Pennsylvania UTPCPL, the Missouri MPA, and the Indiana DCSA (collectively, the "Statutory Claims"). The Statutory Claims are Counts I–III, respectively. Count IV is a claim for unjust enrichment under the common law of Pennsylvania, Missouri and Indiana. Plaintiffs allege this

Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).

Each claim seeks recovery under a common set of allegations: Plaintiffs purchased tickets to a show through the Center Stage website. *Id.* ¶¶ 68, 76, 84, 92. They "believed that the initially listed [base] price would be the actual price [they] would pay," and "included all mandatory fees[.]" *Id.* ¶¶ 73, 81, 89, 97. And while Plaintiffs do not dispute that Center Stage disclosed the service charge prior to the point of sale, they allege that they "relied on the listed [base] price in comparing Helium's offering to other available entertainment offerings, and in [their] initial purchasing decision." *Id.* ¶¶ 74, 82, 90, 98.

## III.    LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if the court lacks subject matter jurisdiction." *Long v. Valley Forge Mil. Acad. Found.*, No. CIV.A. 05-4454, 2008 WL 5157508, at *4 (E.D. Pa. Dec. 8, 2008) (Surrick, J.). Further, "when subject matter jurisdiction is challenged, the plaintiff must bear the burden of persuasion." *PJSC Credit-Moscow Bank v. Khairoulline*, No. CV 15-6604, 2016 WL 4454208, at *2 (E.D. Pa. Aug. 24, 2016) (Surrick, J). Where a plaintiff fails to properly allege injury pursuant to Article III, the court lacks jurisdiction and the claim must be dismissed. *Hendrick v. Aramark Corp.,* 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017) (citation omitted) (granting defendant's 12(b)(1) motion to dismiss where plaintiff failed to properly allege injury).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Carr v. Travelers Home & Marine Ins. Co.*, 700 F. Supp. 3d 288, 294 (E.D. Pa. 2023) (Surrick, J.) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Factual allegations must be enough to

6

raise a right to relief above the speculative level." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[.]" *Id.* (quoting *Iqbal*, 556 U.S. at 678). The Court must not "credit bald assertions or legal conclusions, nor should it accept unwarranted inferences when deciding a motion to dismiss." *Wiener v. Banner Life Ins. Co.*, 2003 U.S. Dist. LEXIS 4957, at *9, No. 02-1351, (E.D. Pa. Feb. 28, 2003) (Surrick, J.) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

In deciding a motion to dismiss, the Court may consider the allegations in the complaint and "documents integral to or explicitly relied upon in the complaint[.]" *Mator v. Wesco Distrib., Inc.*, 102 F.4th 172, 178 (3d Cir. 2024). When the documents relied upon "contradict [the] allegations in the complaint," the documents "control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Pension Benefit Guaranty Corporation v. White Consolidated Industries,* 998 F.2d 1192, 1196 (3d Cir. 1993).

Accordingly, the screenshots control here, and they clearly show Center Stage disclosed the full ticket price prior to accepting payment. Compl. ¶ 66; *see Bounts Techs. Ltd. v. Connectify, Inc.*, No. 2:23-CV-890-MRP, 2025 WL 417339, at *4–5 (E.D. Pa. Feb. 6, 2025) (considering statements made on a website whose screenshots appeared in plaintiff's complaint when analyzing whether the complaint would survive a motion to dismiss).

7

## IV.    <u>ARGUMENT</u>

As detailed below, each of Plaintiffs' claims fails because they have not alleged an "injury-in-fact" necessary to establish standing, nor have they alleged any facts that could conceivably establish that Center Stage engaged in any deceptive or unjust conduct.  Multiple other flaws also dictate dismissal of the Statutory Claims, and the existence of an express contract precludes recovery for unjust enrichment.

### A.    **Plaintiffs Lack Article III and Statutory Standing Because They Have Not Suffered an Injury-in-Fact (Counts I–IV)**

Standing under Article III of the U.S. Constitution is a prerequisite to the Court's exercise of subject matter jurisdiction.  *Bimbo Bakeries USA, Inc. v. Rubio*, 771 F. Supp. 3d 584, 592 (E.D. Pa. 2025).  The standing requirement enables the Court to focus judicial resources on plaintiffs who have suffered actual harm.  As former Chief Judge Goldberg recently observed, "[a] sincere legal, moral, ideological, or policy objection to the defendant's conduct is not enough."  *Fakhreddine v. Univ. of Pennsylvania*, No. 24-CV-1034, 2024 WL 3106186, at *2 (E.D. Pa. June 24, 2024) (quotation omitted), *appeal dismissed*, No. 24-2240, 2024 WL 5316377 (3d Cir. Jul. 26, 2024).

To have Article III standing, a plaintiff must have suffered an injury in fact, *i.e.*, "an invasion of a legally protected interest that is concrete and particularized and actual or imminent[.]"  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338–39 (2016).  "To be concrete, the plaintiff's injury must . . . actually exist."  *In re Rutter's Inc. Data Sec. Breach Litig.*, 511 F. Supp. 3d 514, 522 (M.D. Pa. 2021) (quotation omitted).

The state statutes under which Plaintiffs sue similarly require a legally cognizable injury. *Goldsmith v. Lee Enters. Inc.,* 57 F.4th 608, 615 (8th Cir. 2023) (Missouri MPA); *Hoosier Contractors, LLC v. Gardner*, 212 N.E.3d 1234 (Ind. 2023), *reh'g denied* (Sep. 25, 2023)

8

(Indiana DCSA); *In re Rutter's*, 511 F. Supp. 3d at 540 (Pennsylvania UTPCPL).

**1.    Plaintiffs Do Not Allege Cognizable Economic Injury Because They Received What They Paid For**

"While it is difficult to reduce injury-in-fact to a simple formula, economic injury is one of its paradigmatic forms." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005). Plaintiffs claim economic injury to support their Statutory Claims, alleging they "paid money they otherwise would not have absent Defendant's practices." *E.g.*, Compl. ¶ 115. But to prevail "[u]nder that theory, a plaintiff 'must allege facts that would permit a factfinder to determine that the economic benefit she received in purchasing [the product] was worth less than the economic benefit for which she bargained.'" *Seidl v. Artsana USA, Inc.*, 643 F. Supp. 3d 521, 529 (E.D. Pa. 2022) (quoting *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 282 (3d Cir. 2018)); *accord Vitello v. Natrol,* LLC, 50 F.4th 689, 693 (8th Cir. 2022); *Hennessey v. Gap, Inc.*, 86 F.4th 823, 826 (8th Cir. 2023); *Hughes v. Chattem, Inc.,* 818 F. Supp. 2d 1112, 1119 (S.D. Ind. 2011). The same rule applies to a claim of unjust enrichment. *Hughes*, 818 F. Supp. 2d at 1125; *Aetna Life Ins. Co. v. Huntington Valley Surgery Ctr.*, 2:13-CV-3101-WY, 2014 WL 4116963, at *8 (E.D. Pa. Aug. 20, 2014).

Plaintiffs do not and cannot allege that the tickets they knowingly purchased at full price were actually worth less than that. In this respect, their claims differ fundamentally from the archetypal consumer protection case arising out of the purchase of goods, in which a plaintiff claims "a difference between the representations of the defendants and the actual quality of the products purchased or received by the plaintiffs." *Hennessey*, 86 F.4th at 828 (affirming dismissal of Missouri MPA claim because plaintiff "alleged no facts supporting the claim of a higher represented value other than the false assertion that the advertised former price *was in fact* the represented value." *Id.* at 830. (emphasis in original)).

9

Instead, Plaintiffs claim Center Stage "entice[d]" them into purchasing tickets by advertising a "base ticket price" exclusive of taxes and fees. Compl. ¶¶ 7, 51. But the Order Summary screenshot included in the Complaint at paragraph 66 plainly show that Center Stage disclosed the total price and each of its components, including the service charge, to customers prior to payment. And Plaintiffs admit that they willingly paid the total price—in other words, they ultimately valued the ticket as at least the price they paid, not the base price. Their "disappointment over not receiving [a] . . . discount at the time of purchase" is not "an ascertainable loss." *Hennessey*, 86 F.4th at 830 (quotation omitted).

### 2. Plaintiffs Cannot Establish Economic Injury Based on the Timing of Price Disclosures Made Prior to their Purchase

In any event, a plaintiff who is aware of the total cost of a product or service prior to purchase cannot plausibly allege any concrete harm arising solely from the *timing* of the defendant's disclosure of additional fees. *Cf. Washington v. Hyatt Hotels Corp.*, 1:19-CV-04724, 2020 WL 3058118, at *4 (N.D. Ill. June 9, 2020) (dismissing consumer protection claims where defendant disclosed all fees to customers before paying and customers could have avoided the fees by abandoning the transaction); *Harris v. Las Vegas Sands L.L.C.*, No. CV 12-10858 DMG FFMX, 2013 WL 5291142, at *5 (C.D. Cal. Aug. 16, 2013) (dismissing consumer protection claims because "[d]efendants explicitly disclosed the existence and amount of the [additional] fee, as well as the taxes that would be charged on top of it" prior to purchase).

Plaintiffs further allege they were "unable to compare the costs of Helium's tickets to the cost of attending other ticketed events," Compl. ¶¶ 75, 83, 91, 99, but that, on its own, is insufficient to show injury. For example, Plaintiffs do not allege that, had they shopped around, they "would not have purchased" tickets to a comedy show or "would have purchased cheaper" tickets. *Hughes*, 818 F. Supp. 2d at 1119 (quotation omitted).

10

### 3.      Plaintiffs Suffered No Economic Injury by Agreeing to Pay a Fee Center Stage was Legally Entitled to Charge

Nor do Plaintiffs allege that Center Stage charged an illegal fee.  And paying a fee that a seller is entitled to charge is not a legally cognizable injury, especially where the seller "disclose[s] . . . the amounts charged."  *O'Shaughnessy v. Cypress Media, LLC*, 208 F. Supp. 3d 1064, 1068–1069 (W.D. Mo. 2016) (granting defendant's motion for summary judgment on Missouri MPA claim).  For example, the defendant in *O'Shaughnessy* produced premium editions of its newspaper, which contained more content and "cost more to produce and distribute" than regular editions.  *Id.* at 1068.  The defendant passed on this additional cost to subscribers and disclosed the higher price in their invoices.  *Id.* at 1070–71.  Because of this disclosure, subscribers could not establish "that [the defendant] acted deceptively or that [they] suffered an ascertainable loss as a result of any deception."  *Id.* at 1073; *see, e.g.*, *Zucker v. Pennsylvania Pub. Util. Comm'n*, 401 A.2d 1377 (Pa. Commw. Ct. 1979) (charging an additional fee to customers requesting an unpublished phone number was reasonable to cover the increased total cost of providing the service).

Here, as in *O'Shaughnessy*, Center Stage offers its customers an additional service: the option to purchase tickets online at their leisure, rather than in person at Helium Comedy Clubs.  Center Stage incurs costs in providing this service and disclosed this additional charge to Plaintiffs before it charged them.  Thus, Plaintiffs did not suffer an ascertainable loss when they chose to pay the service charge.

In sum, Plaintiffs do not allege an injury-in-fact required for standing.  They bought tickets to comedy shows—having seen all costs and fees prior to submitting payment—and they attended the shows.  In plain terms, they got exactly what they paid for.  Their ideological objections to the timing of disclosures and their apparent regret about their purchasing decisions

11

are not concrete injuries for the purpose of Article III standing.  The Court therefore lacks subject matter jurisdiction over this action, and for this reason alone, dismissal with prejudice is appropriate under Fed. R. Civ. P. 12(b)(1).

**B.      Plaintiffs' Statutory Claims Fail For Multiple Additional Reasons**

Setting aside the threshold jurisdictional defect that Plaintiffs lack standing, their Statutory Claims all fail because (i) Plaintiffs do not identify a deceptive act; (ii) Center Stage's inclusion of a service charge in the total ticket price would not mislead a reasonable consumer; (iii) Plaintiffs cannot justify their purported reliance on the base ticket price; and (iv) with respect to their Indiana DCSA claim, Plaintiffs do not plead that any deception was "incurable" or "uncured."

**1.      Center Stage's Disclosure of the Service Charge Precludes Any Showing of a Deceptive Act (Counts I–III)**

The three consumer protection statutes relied upon here all seek to remedy deceptive sales practices.  But Plaintiffs fail to allege any facts giving rise to a claim of deception. Plaintiffs' entire theory rests on the flawed premise that Center Stage deceived consumers when it "listed one upfront price to entice consumers into making a purchasing decision" and added a service charge "at the last stage of the transaction[.]"  Compl. ¶¶ 7, 66.

But it is beyond dispute that Center Stage prominently disclosed the existence of all charges—and enabled consumers to see the amount of those charges—prior to purchase.  And "if a man knows the truth about a representation, he is neither deceived nor defrauded, and any loss he may sustain is in effect self-inflicted." *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 353 (W.D. Pa. 2021) (quotation omitted); *accord Crum v. SN Servicing Corp.*, No. 1:19-CV-02045-JRS-TAB, 2021 WL 3514153, at *4 (S.D. Ind. Aug. 10, 2021); *Schulte v. Conopco, Inc*, No. 4:19 CV 2546 RWS, 2020 WL 4039221, at *6 (E.D. Mo. Jul. 17, 2020), *aff'd*, No. 20-2696,

12

2021 WL 1971957 (8th Cir. May 18, 2021).

Courts around the country have dismissed consumer protection claims based on alleged drip pricing where "the website tells the customer the exact amount he will pay if [he] completes the reservation." *Washington*, 2020 WL 3058118, at *4. The disclosure of additional fees "on the same page as the" base price and "on a line of text directly beneath it, . . . would put a reasonable consumer on notice that they would be charged some taxes and fees in addition to the" base price. *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828, at *3 (S.D. Cal. Dec. 16, 2020) (dismissing consumer protection claims alleging "drip pricing" where a hotel booking page "explicitly disclose[d] that the daily rate advertised [did] not equal the total cost").

Disclosure of even an illegally charged fee can preclude recovery. In *McLean*, the court dismissed a Pennsylvania UTPCPL claim when a defendant collected sales tax on nontaxable goods because the consumers knew what they were being charged. 542 F. Supp. 3d at 346. Although the court agreed that the defendant had improperly charged—and the plaintiffs had needlessly paid—sales tax, the "[d]efendant's conduct [could not] be considered deceptive" because it "disclosed the actual pre-tax price . . . and the actual amount of sales tax collected in connection with each transaction." *Id.* at 351. Dismissal of the instant action follows *a fortiori* from *McLean* because Center Stage disclosed the base price and amount of taxes and fees collected, and, unlike the defendant in that case, Center Stage was legally entitled to pass on the costs associated with providing an additional service to customers.

In sum, Plaintiffs' claims must be dismissed because they fail at the most fundamental level: Center Stage disclosed the total price of their tickets, and Plaintiffs willingly paid that price.

13

### 2.    Center Stage's Inclusion of a Service Charge Would Not Mislead a Reasonable Consumer (Counts I and II)

Plaintiffs' Pennsylvania UTPCPL and Missouri MPA claims separately fail because no reasonable consumer would have been deceived by the addition of a service charge.  To the contrary, a reasonable consumer understands that the base price of a ticket does not necessarily include added fees.

Pennsylvania UTPCPL catch-all and Missouri MPA claims must "be analyzed under the 'reasonable consumer' standard."  *Webb v. Dr. Pepper Snapple Grp., Inc.*, No. 4:17-00624-CV-RK, 2018 WL 1955422, at *3 (W.D. Mo. Apr. 25, 2018) (quoting *Murphy v. Stonewall Kitchen, LLC*, 503 S.W.3d 308, 312 (Mo. Ct. App. 2016)); *accord Hall v. Equifax Info. Servs. LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016).  Notably, "the 2020 amendments to the [Missouri MPA] place more stringent requirements on plaintiffs" requiring them to establish "that the person acted as a reasonable consumer would in light of all circumstances" and that the alleged violation "would cause a reasonable person to enter into the transaction that resulted in damages." *Ellison-Robbins v. Bimbo Bakeries USA, Inc.*, 751 F. Supp. 3d 948, 952 (E.D. Mo. 2024) (quotation omitted).

Reasonable consumers consider the entire context of allegedly deceptive conduct, including "website language," *Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 334 (W.D. Pa. 2020), *on reconsideration in part*, No. CV 19-1339, 2021 WL 1185924 (W.D. Pa. Mar. 30, 2021), which may be considered "in its entirety when determining whether any false statements were made," *Lizama v. H&M Hennes & Mauritz LP*, No. 4:22 CV 1170 RWS, 2023 WL 3433957, at *4 (E.D. Mo. May 12, 2023).  "[W]here individuals have the opportunity to read something but choose not to do so," the law will "not excuse their failure."  *Bell v. Annie's, Inc.*, 673 F. Supp. 3d 993, 999 (E.D. Mo. 2023).

14

As shown in the Complaint, Center Stage's Order Summary webpage disclosed the full ticket price, including the service charge, to Plaintiffs before they paid. Compl. ¶ 66. It explicitly listed a total price greater than the base price. A reasonable consumer would read this information, and understand the difference between the base price, exclusive of fees and taxes, and the final price, including the service charge. *See Charbonnet*, 2020 WL 7385828, at *3.

In an attempt to avoid this common sense conclusion, Plaintiffs delve into the realm of academic theory, claiming Center Stage's pricing disclosures were a form of "psychological manipulation" that "exploit[ed] consumers' psychology." Compl. ¶¶ 120–21. But these generalized and unsubstantiated theories about the psychology behind "drip pricing," *see, e.g.*, *id.* ¶¶ 23–24, do not explain how or why Center Stage's ticket purchase process would mislead a reasonable consumer in this case.

The Eastern District of Missouri decision in *Ellison-Robbins* is instructive. In that case, the plaintiff alleged that a label describing a dessert as an "All Butter Loaf Cake" was misleading because it contained artificial flavors contributing to its buttery taste. *Ellison-Robbins*, 751 F. Supp. 3d at 950. But instead of explaining how this phrase was likely to deceive a reasonable consumer, the plaintiff generally alleged that "many consumers avoid artificial flavors." *Id.* at 955. The court dismissed her Missouri MPA claim because her complaint merely "show[ed] some things *about* consumer behavior," rather than alleging "that a reasonable consumer would think that 'All Butter Loaf Cake' contains no artificial flavors." *Id.* (emphasis added). In other words, the court declined to extrapolate from the plaintiff's broad theory about consumer behavior that a reasonable consumer would have been misled by the statement at issue in the case.

15

Similarly here, Plaintiffs admit Center Stage disclosed the full ticket price before accepting any money from its customers.  As a result, they cannot establish that Center Stage's ticket purchase process would mislead a reasonable consumer.  Like the unsuccessful plaintiff in *Ellison-Robbins*, Plaintiffs' theoretical speculation about how unidentified consumers respond to so-called "drip pricing" is insufficient to support recovery under cases applying the Pennsylvania UTPCPL and the Missouri MPA, and would also not support a claim under the Indiana DCSA. This court should not allow Plaintiffs to conflate observations about consumer behavior with an actual tendency to mislead a reasonable consumer.

Moreover, as one federal district court recently held in dismissing a drip pricing consumer protection claim based on a service charge just like the charge here, "a reasonable customer" may "expect[] to pay a modest service fee when paying . . . through an online payment service."  *Harris v. LAZ Parking Ltd., LLC*, No. 3:24-CV-889 (SVN), 2025 WL 473654, at *11 (D. Conn. Feb. 12, 2025).  The defendant in *Harris* posted signs displaying base rates for using its parking lots, then added a service fee when customers paid via an online platform.  *Id.* at *1.  The plaintiff alleged this practice "caused [her] and the putative class to pay more for parking than they would have had [the defendant] not engaged in its wrongful acts."  *Id.* at *11 (quotation omitted).  But the court rejected this "conclusory" assertion and dismissed the plaintiff's Missouri MPA claim, noting the existence of a difference between an initially advertised price and a total price is not enough to "demonstrate that [a plaintiff] acted as a reasonable consumer would in light of all circumstances."  *Id.* at *11 (quotation omitted).

Plaintiffs here make the very allegations held to be insufficient to withstand dismissal in *Harris*.  They note the price difference from the first page to the Order Summary, and claim that they "acted as a reasonable consumer" when they "paid money [they] otherwise would not have

16

absent [Center Stage's] practices."  Compl. ¶¶ 79, 120, 122.  But, just as in *Harris*, these allegations lack the required "plausible factual" support to "show a likelihood" that Center Stage's practices "would mislead a reasonable consumer."  *Harris*, 2025 WL 473654, at *11.

Plaintiffs' failure to allege that Center Stage's disclosures would mislead a reasonable consumer provides an additional ground to dismiss their Pennsylvania UTPCPL and Missouri MPA claims.

### 3.    Plaintiffs Cannot Show Justifiable Reliance (Counts I and III)

The Pennsylvania UTPCPL and the Indiana DCSA "demand[] a showing of justifiable reliance, not simply a causal connection between the [challenged conduct] and the harm."  *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008); *accord Hoosier Contractors*, 212 N.E.3d at 1240.  As the Third Circuit has explained, the distinction between causation and reliance is critical: "[a] mere causal connection can be established by, for instance, proof that a misrepresentation inflated a product's price . . . . A justifiable-reliance requirement, by contrast, requires the plaintiff to go further—he must show that he justifiably bought the product *in the first place* . . . because of the misrepresentation."  *Hunt*, 538 F.3d at 223 n.4 (emphasis added) (citing *Weinberg v. Sun Co.,* 777 A.2d 442, 445–46 (Pa. 2001)); *accord Reger v. Arizona RV Centers*, LLC, 515 F. Supp. 3d 915, 944–45 (N.D. Ind. 2021), *dismissed*, No. 22-3169, 2023 WL 3750399 (7th Cir. Mar. 2, 2023).  The plaintiff "has the burden of establishing . . . reliance on the alleged misrepresentations" *Palmer v. Ameribanq Mortg. Grp., LLC*, No. 05-2023, 2010 U.S. Dist. LEXIS 107340 (E.D. Pa. Oct. 6, 2010) (Surrick, J.).

Plaintiffs' conclusory allegations that Plaintiffs Jonas, Pavlow, and Schalk "relied" on the pre-service charge prices "in [their] initial purchasing decision[s]" are insufficient to withstand a

17

motion to dismiss. *See* Compl. ¶¶ 74, 90, 98. First, Plaintiffs concede they could not have relied on the base prices when they actually purchased their tickets, because "the full price of the transaction [was] revealed" before purchase. *Id*. ¶ 67. And "knowledge negates the affirmative element of reliance." *Plumbers' Loc. Union No. 690 Health Plan v. Apotex Corp.*, No. CV 16-665, 2017 WL 4235773, at *7 (E.D. Pa. Sep. 25, 2017) (dismissing Pennsylvania UTPCPL claim) (citing *City of Philadelphia v. Lead Indus. Ass'n,* No. 90-7064, 1992 WL 98482, at *3 n.4 (E.D. Pa. Apr. 23, 1992)); *accord Plymale v. Upright*, 419 N.E.2d 756, 761 (Ind. Ct. App. 1981) (explaining a person cannot rely on a representation if "he was informed of the real facts").

Second, Plaintiffs cannot justify their purported reliance. A plaintiff is "not justified in relying upon the truth of an allegedly fraudulent" or deceptive "misrepresentation if he knows it to be false or if its falsity is obvious." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 207 (Pa. 2007) (collecting cases); *Scaife Co. v. Rockwell-Standard Corp.*, 285 A.2d 451, 455 (Pa. 1971). "[T]he law will not protect one who fails to exercise common sense and judgment." *Plymale*, 419 N.E.2d at 762 (citing *Gatling v. Newell*, 9 Ind. 572 (1857)). Before purchasing their tickets, Plaintiffs were admittedly informed that the total price exceeded the base price, *see* Compl. ¶¶ 67, 75, 91, and they cannot now shift the blame for their supposed inattentiveness to Center Stage.

Further, even assuming the named Plaintiffs actually relied on the lower price, such reliance would not be justifiable because the ticket purchase was a contract whose full terms, including the service charge, were set forth in the Order Summary. Where a proprietor of a theater "sells a ticket, he creates contractual relations with the holder of it." *Horney v. Nixon*, 61 A. 1088, 1090 (Pa. 1905); *cf. Cherry v. Chicago & A.R. Co.*, 90 S.W. 381, 386 (Mo. 1905); *Indianapolis St. R. Co. v. Wilson*, 66 N.E. 950, 951 (Ind. 1903); *Pennsylvania Co. v. Bray,* 25

18

N.E. 439 (Ind. 1890).  And a plaintiff asserting an unfair or deceptive trade practices claim "cannot justifiably rely on a defendant's representations that are in direct conflict with the terms of the contract."  *Nicolaides v. Bank of Am. Corp.*, No. 10-1762, 2012 U.S. Dist. LEXIS 96576, at *19 (E.D. Pa. Jul. 11, 2012) (Surrick, J.); *accord Plymale*, 419 N.E.2d at 761.

Plaintiffs cannot sidestep the reliance requirement by creating an artificial distinction between their "initial" purchasing decision and their "final" purchasing decision.  As the Pennsylvania Supreme Court held in dismissing a Pennsylvania UTPCPL claim, plaintiffs "simply cannot be said to have *justifiably* relied on any representations made by the [defendants] before the parties entered into the [contract]," because by entering into the contract, plaintiffs "disclaimed reliance on any such representations."  *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 439 (Pa. 2004) (emphasis in original) (dismissing claim alleging deception regarding stadium seat licenses).  Therefore, even if the Court were to conclude that Plaintiffs have alleged reliance, it should still dismiss their Pennsylvania and Indiana Statutory Claims because, given the undisputed contractual terms reproduced in the Complaint in the form of screenshots, any reliance could not be justified.

Finally, even if Plaintiffs could establish justifiable reliance, their claims would still fail because they do not allege that they "suffered harm *as a result of* [their] reliance," as required by Pennsylvania and Indiana law.  *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 9 (Pa. Super. 2004) (emphasis added) (collecting cases), *aff'd*, 928 A.2d 186 (Pa. 2007); *accord Reger*, 515 F. Supp. 3d at 944–45; *see McLean*, 542 F. Supp. 3d at 352 (explaining justifiable reliance alone is not enough to show an ascertainable loss).  Plaintiffs only allege reliance with respect to their "*initial* purchasing decision[s.]"  Compl. ¶¶ 74, 90, 98 (emphasis added).  This initial decision apparently consisted of proceeding through the ticket purchase process *until* the service charge

19

was disclosed, which is legally irrelevant because it did not obligate the Plaintiffs to buy anything. In effect, Plaintiffs only allege they relied on the base price when deciding to continue browsing Center Stage's website. But their alleged injury was not looking at a website—it was "pay[ing] money[.]" *Id.* ¶ 115. They cannot rely on the "unwarranted inference," *McLean*, 542 F. Supp. 3d at 348, that once they saw the base price, they were compelled to purchase tickets. Plaintiffs' inability to allege justifiable reliance provides another basis to dismiss their Pennsylvania UTPCPL and Indiana DCSA claims.

### 4. Plaintiffs Do Not Allege an Incurable or Uncured Deceptive Act as Required by the Indiana DCSA (Count III)

The Indiana DCSA provides a cause of action only for incurable or uncured deceptive acts. Ind. Code Ann. § 24-5-0.5-4(a). Here, Plaintiffs fail to allege either. As a threshold matter, they do not even mention the words "incurable" or "uncured" in this Count. Moreover, they do not come close to meeting the heightened pleading standard for an incurable claim. *Reger*, 515 F. Supp. 3d at 940 (quoting *Smith v. Nexus RVs, LLC*, 468 F. Supp. 3d 1012, 1026 (N.D. Ind. 2020) ("Intent on the part of the violator is required under the [Indiana DCSA] for 'incurable' deceptive acts[.]")). And because Plaintiffs have failed to allege an incurable—*i.e.* a fraud-based—deceptive act under the Indiana DCSA, they must allege an uncured deceptive act in order to maintain this claim. *Reger*, 515 F. Supp. 3d at 940 (citing Ind. Code Ann. § 24-5-0.5-5(a)1(2)). A deceptive act is "uncured" if the consumer timely satisfied the statutory notice requirement and the supplier did not (1) offer to cure within thirty days of notice, or (2) cure in a reasonably timely fashion. Ind. Code Ann. § 24-5-0.5-2(a)(7).

Plaintiffs' Indiana DCSA claim is barred because Plaintiff Schalk did not properly notify Center Stage of its allegedly deceptive act before the statutory deadline. He purchased his ticket on December 13, 2024, and became aware of the fee "at the last step of the transaction[.]"

Compl. ¶¶ 91, 99. Thus he had until June 13, 2025 to notify Center Stage in writing of "the nature of the alleged deceptive act and the actual damage suffered therefrom[.]" Ind. Code Ann. § 24-5-0.5-5(a). The Complaint contains no such allegation. And "[a] consumer's failure 'to give proper notice to the supplier of an uncured deceptive act precludes the application of the [Indiana DCSA] altogether.'" *Reger*, 515 F. Supp. 3d at 940 (quoting *Lehman v. Shroyer*, 721 N.E.2d 365, 368 (Ind. Ct. App. 1999)).

For this additional reason, Plaintiffs' Indiana DCSA claim must be dismissed.

### C.    Plaintiffs' Unjust Enrichment Claims Fail (Count IV)

#### 1.    Defendants' Retention of the Service Charge is Not Inequitable or Unjust

To state a claim for unjust enrichment, a plaintiff must establish that the defendant's retention of a benefit received from the plaintiff would be "inequitable" or "unjust." *Hennessey*, 86 F.4th at 830–31 (quoting *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014)); *Ruggiero v. Nocenti*, No. CV 18-3047, 2020 WL 7133767, at *1 (E.D. Pa. June 30, 2020) (citing *MRO Corp. v. Humana Inc.*, 383 F. Supp. 3d 417, 424 (E.D. Pa. 2019)); *Hughes*, 818 F. Supp. 2d at 1124 (citing *Bayh v. Sonnenburg,* 573 N.E.2d 398, 408 (Ind. 1991)); *Kelly v. Levandoski,* 825 N.E.2d 850, 861 (Ind. Ct. App. 2005)). The retention of a benefit is neither inequitable nor unjust "if the parties receive what they intended to obtain." *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (quoting *Am. Standard Ins. Co. of Wisconsin v. Bracht,* 103 S.W.3d 281, 293 (Mo. Ct. App. 2003)).

Here, Plaintiffs "received the products [they] intended to purchase and paid the advertised sale price." *Hennessey*, 86 F.4th at 831. As discussed *supra*, Part IV.A, they do not allege the value they paid differed from the value they received. They may now be "dissatisfied" with their purchases, but because "they fail to allege . . . that they did not receive the benefit of

21

their bargain, . . . an order of unjust enrichment is inappropriate." *Hughes*, 818 F. Supp. 2d at 1125; *accord Aetna Life Ins.*, 2014 WL 4116963, at *8 ("The payments for which [Plaintiffs] now seek[] rescission were made volitionally . . . . To the extent [Plaintiffs] now claim[ they] regret [] those payments," there is "no reason to believe that the law provides [them] with a remedy.").

### 2.      The Parties' Relationship is Governed by an Express Contract

"[A] plaintiff may not recover under an unjust enrichment theory when an enforceable contract governs the subject matter." *Doe v. Butler Univ.*, 696 F. Supp. 3d 520, 530 (S.D. Ind. 2023) (citing *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023)); *accord Hennessey*, 86 F.4th at 831; *Williams v. Enter. Holdings, Inc.*, No. CIV.A. 12-05531, 2013 WL 1158508, at *4 (E.D. Pa. Mar. 20, 2013).  Plaintiffs entered into a contract with Center Stage when they purchased their tickets.  *See supra* Part IV.B.3; *Dean Mach. Co. v. Union Bank*, 106 S.W.3d 510, 520 (Mo. App. 2003) ("A contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.").

The Parties' contract provides for the exchange of a comedy show ticket for a price that includes a service charge, which is the very contractually-authorized charge Plaintiffs allege to "have unjustly enriched" Center Stage.  *CoMentis, Inc. v. Purdue Rsch. Found.*, 765 F. Supp. 2d 1092, 1102 (N.D. Ind. 2011); Compl. ¶ 132.  Because "the exchange of money between the parties was explicitly governed by the written . . . agreement . . . Plaintiff's unjust enrichment claim fails[.]" *Williams v. Enter. Holdings, Inc.*, No. CIV.A. 12-05531, 2013 WL 1158508, at *4 (E.D. Pa. Mar. 20, 2013).

22

**D.** **The Court Should Ignore References to the FTC Rule and the FTC Act**

Finally, the Court should disregard the Complaint's extended discussion of the FTC Trade Regulation Rule on Unfair or Deceptive Fees, 90 Fed. Reg. 2066 (Jan. 10, 2025) (the "FTC Rule"), *see* Compl. ¶¶ 1-9, 19-40, and the FTC Act, 15 U.S.C. § 45(a) 46-49, *see* Compl. ¶¶ 46-49, because these authorities are wholly unconnected to the claims alleged in the Complaint. Private plaintiffs lack standing to enforce the FTC Rule and the FTC Act. *Kornea v. J.S.D Mgt., Inc.*, 366 F. Supp. 3d 660, 669 (E.D. Pa. 2019). And in any event, the FTC Rule did not become effective until after the purchases alleged in the Complaint. 90 Fed. Reg. 2066 (Jan. 10, 2024) ("This rule is effective May 12, 2025"). As if that were not enough, Plaintiffs implicitly concede that Center Stage's current website complies with the FTC Rule. *See* Compl. ¶ 7. By devoting dozens of paragraphs and footnotes to the FTC Rule, Plaintiffs underscore their inability to cobble together a state law basis for recovery here.

**V.** **CONCLUSION**

Plaintiffs willingly paid full price for tickets to comedy shows and, thanks to Center Stage's website, were able to do so online at their leisure. Now they ask this Court to grant them a partial refund for a service they freely and fully took advantage of. Center Stage respectfully requests that the Court dismiss this action with prejudice.

Date: September 8, 2025

/s/ *Edward D. Rogers*
Edward D. Rogers
Haesun K. Burris-Lee
Elizabeth A. Lilly
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215.665.8500
Facsimile: 215.864.8999

*Attorneys for Defendant Center Stage Comedy, L.P.*

23